UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------x

RICHARD REGIS,

        Petitioner,

v.

UNITED STATES OF AMERICA,

        Respondent.

----------------------------------------------------------x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/1/09

08 CV 9904 (CM)
05 CR 1331(CM)

### DECISION AND ORDER DENYING PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

McMahon, J.:

    Information S 05 Cr. 1331 (CM) (the "Information") was filed on June 28, 2006 against Regis. Specifically, the Information charged Regis with: (1) one count of conspiring to commit armed bank robbery and armed credit union robbery, in violation of Title 18, United States Code, Section 371; (2) one count of conspiring to violate the Hobbs Act, in violation of Title 18, United States Code, Section 1951; (3) one count of attempted armed bank robbery, in violation of Title 18, United States Code, Sections 2113(a) and 2; (4) one count of armed credit union robbery, in violation of Title 18, United States Code, Sections 2113(d) and 2; and (5) one count of possessing a firearm in furtherance of an attempted bank robbery, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i) and 2.

    On June 28, 2006, Regis pled guilty to all five counts of the Information pursuant to a written plea agreement in which he stipulated, *inter alia*, that he would not appeal or otherwise challenge a sentence that was within or below the range of 181 to 211 months' imprisonment. On November 13, 2006, this Court sentenced Regis to a term of 211 months' imprisonment, to be followed by a five-year term of supervised release, and ordered Regis to pay $301,900 in restitution as well as a mandatory $500 special assessment. Regis is currently serving his sentence.

    On June 30, 2008, the Court of Appeals for the Second Circuit dismissed Regis's appeal as, *inter alia*, untimely filed.

    On or about October 15, 2008, Regis filed the instant petition pursuant to 28 U.S.C. § 2255.[1]

---

[1] Although the motion was date stamped received by the Pro Se Clerks Office on October 20, 2008, and date stamped received by the Court Clerk's Office on November 17, 2008, no copy was ever sent to chambers. The Court first learned of the motion on May 26, 2009, when the

Regis contends that: (1) he received ineffective assistance of counsel from Gail Gray, Esq.; and (2) the evidence was not sufficient to establish his guilt on Count Three of the Information.

<u>Ineffective Assistance of Counsel Claim</u>

Regis argues that his attorney, Gail Gray, provided him with ineffective assistance.

To prevail on a claim of ineffective assistance of counsel, a defendant must (1) overcome a "strong presumption" that his attorney's conduct was reasonable and show that the representation "fell below an objective standard of reasonableness" under "prevailing professional norms"; and (2) "affirmatively prove prejudice," that is, show "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u> v. <u>Washington</u>, 466 U.S. 668, 687-89, 693-94 (1984); <u>accord</u>, e.g., <u>Mayo</u> v. <u>Henderson</u>, 13 F.3d 528, 533 (2d Cir.), <u>cert</u>. <u>denied</u>, 513 U.S. 820 (1994).

To satisfy the first prong of <u>Strickland</u>, a defendant must show that his "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." <u>Strickland</u> v. <u>Washington</u>, 466 U.S. at 687. "The benchmark for judging [a] claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." <u>United States</u> v. <u>DiTommaso</u>, 817 F.2d 201, 215 (2d Cir. 1987) (citing <u>Strickland</u>, 466 U.S. at 686).

Even if an attorney's performance was objectively unreasonable, the defendant must also prove prejudice. The defendant "must show 'that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" <u>Lockhart</u> v. <u>Fretwell</u>, 506 U.S. 364, 369 (1993) (quoting <u>Strickland</u>, 466 U.S. at 687). The reviewing court must assess "whether, absent counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different." <u>Mayo</u> v. <u>Henderson</u>, 13 F.3d at 534.

Regis alleges that Ms. Gray: (1) "induced" him to plead guilty to Count Three of the Information even though she "was fully aware that [Regis] had no involvement and/or knowledge of the use of the [f]irearms at the time of the offense . . . and did not explain to [him] that signing the plea agreement would waive [his] right to appeal the conviction and sentence on Count 3" (Pet. at 5); (2) "caused [him] to waive [his] right to appeal . . . [and] led [him] to believe that [he] would be allowed to appeal the gun conviction and sentence" (Pet. at 8); and (3) "mislead [him] into pleading guilty . . . [and] lead [him] to believe that [he] could not be sentenced to consecutive sentence [on the firearm count]" (Pet. at 9).

---

Assistant United States Attorney who prosecuted Mr. Regis's case stumbled across a docket entry, indicating that Mr. Regis had filed a §2255 motion last November. The assistant dutifully notified the Court forthwith and my chambers staff immediately retrieved the dormant motion from the court's file room.

In her affidavit, Gray states that Regis "did not assert his innocence on the federal 924(c) count [Count Three of the Information] or any other count, and his authorization to secure a beneficial resolution of his case embraced negotiation of a plea to that count as well as others." (Exhibit D, Gray Aff. ¶ 6). She further states that Regis's contention that "he is not guilty on the 924(c) count is belied by their numerous conversations. . . ." (Gray Aff. ¶ 10).

According to Gray, Regis "read the agreement, listened carefully to [Gray's] explanations and fully participated in discussions regarding the plea provisions, his sentence exposure and the waiver of the his right to appeal." (Gray Aff. ¶ 8). At no time did Gray put "words in [Regis's] mouth nor did [she] suggest what words he should use or what answers he should give during the allocution." (Gray Aff. ¶ 14). She advised Regis "of the constraints imposed on his right to appeal [and] never stat[ed] or suggest[ed] he was free to somehow circumvent or overcome the explicit waiver." (Gray Aff. ¶ 16).

Finally, Gray states that she did not "mislead [Regis] into believing he would escape consecutive punishment for the agreed-upon use and possession of a firearm during a crime of violence." (Gray Aff. ¶ 20).[2] Nor, did Gray mislead Regis "into believing that he would be allowed to appeal the gun count (or any other count)." (Gray Aff. ¶ 19). Further, at "no time prior to the imposition of sentence did [Regis] express a desire or intention to appeal . . . not until after the sentence was imposed, and the deadline for timely filing of the notice of appeal had passed . . . [did Regis mention] an interest in appealing the conviction and ask[] that I file a notice of appeal on his behalf." (Gray Aff. ¶ 17-18).

Other than offering his own self-serving statements, there is simply no evidence to support Regis's unfounded allegations.

Moreover, the plea allocution and signed plea agreement contradict Regis's claims in the instant petition. During the plea allocution, Magistrate Judge Smith confirmed that Regis understood the charges against him and the maximum and mandatory minimum penalties he was facing; that he had discussed the charges with his attorney, Gail Gray, Esq.; and that he was satisfied with Ms. Gray's representation. (Exh. A at 3-15). Specifically, Magistrate Judge Smith advised Regis that by pleading guilty to Count Three of the Information – the Section 924(c) count – he "would be subject to a mandatory minimum five-year term to be imposed consecutively to any term imposed for Count 2." (Exh. A at 12).

Magistrate Judge Smith also directed Regis's attention to the Plea Agreement, and confirmed that no promises other than those contained in the Plea Agreement had been made to induce Regis to plead guilty. (Exh. A at 10). Magistrate Judge Smith similarly confirmed that no threats had been made to Regis to induce him to plead guilty, and that no one had forced him to sign the Plea Agreement. (Exh. A at 12).

---

[2] This paragraph is mistakenly numbered as paragraph 16 in Gray's affidavit. Because it follows paragraph 19, it is referred to as paragraph 20.

Magistrate Judge Smith specifically asked Regis whether he understood the "waiver" provisions in the Plea Agreement by asking him:

> Do you also understand that you would have the right to appeal any sentence that is greater than the guidelines range set forth in the Plea Agreement and that the government would have the right to appeal any sentence that is lower than the guidelines range set forth in the plea agreement, do you understand that? . . . . Do you understand that one effect of this Plea Agreement is that you are giving up other rights that you might have had to appeal the sentence imposed by the Court, do you understand that?

(Exh. A at 17-18). Regis answered each of these questions, "Yes, ma'am." (Exh. A at 18).

These statements "carry a strong presumption of verity," Blackledge v. Allison, 431 U.S. 63, 74 (1977), and are conclusive here, absent some compelling reason to believe that they were not true. See United States v. Gonzalez, 970 F.2d 1095, 1101 (2d Cir. 1992); United States v. Napolitano, 212 F. Supp. 743, 747 (S.D.N.Y. 1963) (Weinfeld, J.).

Further, the plea agreement -- which he stated under oath that he understood and had signed freely and voluntarily -- also stated, in relevant part:

> the defendant is charged in Count Three with a violation of Title 18, United States Code, Section 924(c)(1)(A)(I), which requires a mandatory term of imprisonment of 60 months to be served consecutively to the term of imprisonment imposed on Count Two of the Indictment

> \*     \*     \*     \*

> the defendant will not file a direct appeal, nor litigate under Title 28, United States Code, Section 2255 and/or Section 2241, any sentence within or below the Stipulated Guidelines Range set forth above

> \*     \*     \*     \*

> the defendant hereby acknowledges that he has accepted this Agreement and decided to plead guilty <u>because he is in fact guilty</u>.

(Exhibit B at 5-6) (emphasis added).

At sentencing, the Court confirmed with Regis that he was aware that under the Plea Agreement that he had waived his right to appeal a sentence of 211 months' imprisonment. (Exh. C at 20-21). Regis was shown a copy of the Plea Agreement (Exh. C at 20), and confirmed that he

had signed the Plea Agreement. (Exh. C at 21). The Court also confirmed that: (i) Regis had talked with his counsel prior to signing the Plea Agreement; (ii) his counsel had explained to him that if he was sentenced to 211 months or less that he would not appeal his sentence; and (iii) he had signed the Plea Agreement exercising his own free will. (Exh. C at 21). The Court stated: "I've sentenced you to 211 months. And it's my understanding, sir, that you have waived your right to take an appeal." (Exh. C at 21). The Court then asked Regis: "Is that also your understanding, sir?" (Exh. C at 21). Regis responded: "Yes, ma'am." (Exh. C at 21).

Finally, for the reasons set forth infra, Regis cannot show prejudice. Even if a timely appeal had been filed, it would have been fruitless because not only did Regis waive his right to appeal in the plea agreement but also Regis fully allocuted to Count Three of the Information. As his counsel – who were appointed by the Second Circuit – conceded in their Anders submission, there were no non-frivolous issues to be raised on appeal.

Since Mr. Regis's ineffective assistance claim is facially meritless and raises no factual issues that bear exploration, he is not entitled to an evidentiary hearing. See Newfield v. United States, 565 F.2d 203, 207 (2d Cir. 1977). Regis has submitted no documentary evidence to the Court that substantiates any of his claims. In such circumstances, this Court may resolve the claims without holding a testimonial hearing. See Chang v. United States, 250 F.3d 79, 85-86 (2d Cir. 2001).

Accordingly, Regis's is not entitled to relief based on his claim of ineffective assistance of counsel.

<u>Challenge to Plea Allocution on Count Three</u>

While not disputing his guilty plea to the underlying crime of violence charged in the Information – the attempted bank robbery – or his guilty plea to participating in a conspiracy to commit bank robbery, Regis argues that his plea is flawed because the plea colloquy did not establish a "factual basis [on Count Three of the Information] . . . as a matter of law." (Regis Pet. at 6).[3]

Because the law is clear that a defendant is liable for all acts that are reasonably foreseeable during the course of his criminal conspiracy, see Pinkerton v. United States, 328 U.S. 640 (1946), there was more than a sufficient basis for Regis's guilty plea to the 924(c) count. In United States v. Medina, the Second Circuit addressed the nature of the proof necessary to sustain a conviction for the crime of using or carrying a firearm in connection with a crime of violence, in violation of Title 18, United States Code, Section 924(c). This Court held:

> [A defendant] cannot be convicted <u>as an aider and abettor</u> under §

---

[3] On appeal, Regis submitted a Pro Se Supplemental Brief arguing that there was an insufficient factual basis to support his guilty plea to Count Three of the Information – charging with a violation of Title 18, United States Code, Sections 924(c)(1)(A)(i) and 2. Because the Court of Appeals determined that his appeal was untimely filed, it did not reach this issue.

> 924(c) merely because he knew that a firearm would be used or carried and, with that knowledge, performed an act to facilitate or encourage the robbery itself. Rather, the language of the statute requires proof that [the defendant] performed some act that directly facilitated or encouraged the use or carrying of a firearm.

32 F.3d at 45 (emphasis added). In Medina, the defendant was charged not with personally carrying the firearm used in connection with a robbery, but with aiding and abetting his co-conspirators' attempt to use such a weapon. Id. at 42. In reversing the defendant's Section 924(c) conviction, this Court held that, under the facts of that case, the evidence adduced at trial failed to meet the standard set forth above.

Subsequently, in United States v. Masotto, 73 F.3d 1233 (2d Cir. 1996), the Second Circuit held that a defendant may be convicted of violating Section 924(c) under a so-called Pinkerton theory of liability, see Pinkerton v. United States, 328 U.S. 640 (1946), notwithstanding the Circuit's holding in Medina. Under a Pinkerton theory, a defendant is guilty of a Section 924(c) violation if:

> (1) the defendant conspired to commit a crime involving violence or drug trafficking; (2) the § 924(c) offense was committed in furtherance of the conspiracy; and (3) the [§ 924(c)] offense was a reasonably foreseeable consequence of an act furthering the unlawful agreement.

Rosario v. United States, 164 F.3d 729, 734 (2d Cir. 1998) (citing, inter alia, Masotto, 73 F.3d at 1241).

In Masotto, the defendant was convicted of violating Section 924(c) after a trial in which the jury was instructed on both a Pinkerton theory and a simple aiding and abetting theory of liability. 73 F.3d at 1239. On appeal, the defendant argued that the Pinkerton instruction was error, in light of Medina's holding that, to be convicted of Section 924(c), a defendant must personally "perform[] some act that directly facilitated or encouraged the use or carrying of a firearm." Masotto, 73 F.3d at 1239. The Court of Appeals rejected that argument, finding that it was "well-settled" in this Circuit that a Section 924(c) violation may be supported by a Pinkerton theory of liability. Id. The Second Circuit explained:

> Our holding in Medina does not affect this court's precedent that a Pinkerton instruction may be given as an alternative theory of liability under § 924(c). In Medina, we addressed the question of whether there was sufficient evidence to support a § 924(c) conviction under an aiding and abetting theory. . . . However, we were not there concerned with a Pinkerton instruction and our holding therefore was limited to an aiding and abetting theory of liability. Thus, Medina does not affect the applicability of a Pinkerton instruction to a §

-6-

924(c) conviction.

Masotto, 73 F.3d at 1240. See also United States v. Thomas, 34 F.3d 44, 50 (2d Cir. 1994) (upholding Section 924(c) conviction, post Medina, where the district court instructed jury on both aiding and abetting and Pinkerton theory of liability).

Although Masotto involved a jury trial, the Second Circuit has also affirmed that a Pinkerton theory of liability for a Section 924(c) violation applies equally in the guilty plea context. See Rosario v. United States, 164 F.3d at 734.

In light of the foregoing precedents, the facts adduced at Regis's guilty plea proceeding amply establish the defendant's guilt of the charged Section 924(c) offense, under a Pinkerton theory of liability. First, Regis "conspired to commit a crime involving violence." Rosario, 164 F.3d at 734. In his allocution, Regis explained coordinating with other individuals to commit the violent crime of bank robbery. Magistrate Judge Smith asked Regis about his intentions and those of his co-conspirators:

> THE COURT: Did you and your co-conspirators on or about April 20, 2005 attempt to get information for the purposes of committing a robbery at the First National Bank of Jeffersonville in Loch Sheldrake, New York?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: And was it your attention along with your co-conspirators to get information by using force and violence then to obtain property held by the First National Bank of Jeffersonville in Loch Sheldrake, New York?
>
> THE DEFENDANT: Yes, ma'am.

(Exhibit A at 31-32). Thus, Regis acknowledged his personal participation in a conspiracy with others to commit a crime of violence.

Second, the Section 924(c) offense was in fact committed, and was done so "in furtherance of the conspiracy." Rosario, 164 F.3d at 734. Title 18, United States Code, Section 924(c)(1)(A) provides, in relevant part, that "any person who, during and in relation to any crime of violence . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm," shall be punished. 18 U.S.C. § 924(c) (1) (A).

Magistrate Judge Smith also questioned Regis about the use of a firearm in connection with their plan to rob the First National Bank of Jeffersonville:

>THE COURT: Did you and others in the course of that offense use an carry a firearm?
>
>THE DEFENDANT: Yes, ma'am.
>
>THE COURT: Who was it who possessed the firearm? Did you possess the firearm?
>
>THE DEFENDANT: No, ma'am.
>
>THE COURT: Who was it who had the firearm?
>
>THE DEFENDANT: My co-conspirators.
>
>THE COURT: Did you know that they had firearms?
>
>THE DEFENDANT: Yes, ma'am.
>
>THE COURT: What kind of firearms were they?
>
>THE DEFENDANT: 40 caliber.
>
>THE COURT: To the best of your knowledge, these were loaded with ammunition? To the best of your knowledge?
>
>THE DEFENDANT: No. I know the 40 caliber, yeah. Yeah, it was loaded.

(Exhibit A at 32). Thus, the second Pinkerton element was satisfied: i.e., the Section 924(c) offense was committed in furtherance of the conspiracy.

Third and finally, commission of the Section 924(c) offense was a "reasonably foreseeable consequence of an act furthering the unlawful agreement." Rosario, 164 F.3d at 734. Here, Magistrate Judge Smith questioned Regis about what he and his co-conspirators intended to do with the firearm:

>THE COURT: Were these firearms intended to be used for the purpose of trying to commit the bank robbery that you had intended to commit in Loch Sheldrake?
>
>THE DEFENDANT: Yes ma'am.
>
>THE COURT: Were the firearms used for the purpose of intimidating this bank employee in order to try and get information?

THE DEFENDANT: Yes, ma'am.

(Exhibit A at 32-33). Thus, each of the three elements of Pinkerton liability for the substantive Section 924(c) crime was amply met at Regis's plea allocution. Under these circumstances, there was an adequate factual basis for the plea. Regis's challenge to the adequacy of his plea allocution as it related to Count Three is without merit.

Accordingly, Regis's § 2255 motion is denied in its entirety.

As Petitioner has made no substantial showing of the denial of a constitutional right, there is no question of substance for appellate review. Therefore, no certificate of appealability shall issue. 28 U.S.C. § 2253; see United States v. Perez, 129 F. 3d 255, 259-60 (2d Cir. 1997); Lozada v. United States, 107 F. 3d 1011 (2d Cir. 1997); Rodriguez v. Scully, 905 F. 2d 24 (2d Cir. 1990). I certify, pursuant to 28 U.S.C. § 1915(a), that an appeal from this order would not be taken in good faith. Coppedge v. United States, 369 U.S. 438 (1962).

This constitutes the decision and order of the Court.

**The Clerk of Court is directed to close the case and send the parties appeal instructions.**

September 30, 2009

_____
U.S.D.J.

BY FAX TO:

John Collins
Assistant United States Attorney
United States Courthouse
300 Quarropas Street
White Plains, New York 10601-4150

BY FIRST CLASS MAIL:

Richard Regis
( # 84697-054)
F.C.I. Otisville
P.O. Box 1000
Otisville, NY 10963
PRO SE